2005 OK CR 18

**Stephen Ray THACKER, Appellant**

v.

**STATE of Oklahoma, Appellee.**

No. PCD–2003–137.

Court of Criminal Appeals of Oklahoma.

Sept. 13, 2005.

———

Vicki Ruth Adams Werneke, Division Chief, Okla. Indigent Defense System, Capital Post–Conviction Division, Norman, OK, counsel for appellant on appeal.

### OPINION DENYING POST–CONVICTION RELIEF

LUMPKIN, V.P.J.

¶ 1 Petitioner waived his right to a jury trial and appellate review of his convictions and pled guilty to the crimes of First Degree Murder, Kidnapping, and First Degree Rape in the District Court of Mayes County, Case Number CF–99–305. He was convicted of those crimes and subsequently waived a jury trial on the three aggravating circumstances alleged by the State.[1] Following a non-jury trial on the aggravating circumstances, the trial judge sentenced Petitioner to death on the murder charge, ten years imprisonment on the kidnapping charge, and fifty years imprisonment on the rape charge, to be served consecutively.

¶ 2 Petitioner appealed his convictions and sentences to this Court, but we denied relief. *See Thacker v. State,* 2004 OK CR 32, 100 P.3d 1052. He then filed an appeal with the United States Supreme Court, but the Court

1. (1) The murder was committed for the purpose of avoiding or preventing lawful arrest or prosecution; (2) The existence of a probability that Appellant would commit criminal acts of violence that would constitute a continuing threat to society; and (3) The murder was especially heinous, atrocious, or cruel.

refused to grant certiorari. *Thacker v. Oklahoma*, —— U.S. ——, 125 S.Ct. 1611, 161 L.Ed.2d 288 (2005).

¶ 3 On February 14, 2005, Petitioner filed this, his first application for post-conviction relief, raising three issues. For the reasons set forth below, we find post-conviction relief is not warranted.

■ ¶ 4 On numerous occasions, this Court has set forth the narrow scope of review available under the amended Post–Conviction Procedure Act. *See e.g., McCarty v. State*, 1999 OK CR 24, ¶ 4, 989 P.2d 990, 993, *cert. denied*, 528 U.S. 1009, 120 S.Ct. 509, 145 L.Ed.2d 394 (1999). The Post–Conviction Procedure Act was neither designed nor intended to provide applicants another direct appeal. *Walker v. State*, 1997 OK CR 3, ¶ 3, 933 P.2d 327, 330, *cert. denied*, 521 U.S. 1125, 117 S.Ct. 2524, 138 L.Ed.2d 1024 (interpreting Act as amended). The Act has always provided petitioners with very limited grounds upon which to base a collateral attack on their judgments. Accordingly, claims that could have been raised in previous appeals but were not are generally waived; claims raised on direct appeal are *res judicata*. *Thomas v. State*, 1994 OK CR 85, ¶ 3, 888 P.2d 522, 525 (Okl.Cr.1994), *cert. denied*, 516 U.S. 840, 116 S.Ct. 123, 133 L.Ed.2d 73 (1995).

¶ 5 The new Act makes it more difficult for capital post-conviction applicants to avoid procedural bars. *Walker*, 1997 OK CR 3, ¶ 4, 933 P.2d at 331. Under 22 O.S.2001, § 1089(C)(1), only claims that "[w]ere not and could not have been raised" on direct appeal will be considered. A capital post-conviction claim could not have been raised on direct appeal if: (1) it is an ineffective assistance of trial or appellate counsel claim which meets the statute's definition of ineffective counsel; or (2) the legal basis of the claim was not recognized or could not have been reasonably formulated from a decision of the United States Supreme Court, a federal appellate court or an appellate court of this State, or is a new rule of constitutional law given retroactive effect by the Supreme Court or an appellate court of this State. 22 O.S.2001, §§ 1089(D)(4)(b), 1089(D)(9).

¶ 6 Should a Petitioner meet this burden, this Court shall consider the claim only if it "[s]upport(s) a conclusion either that the outcome of the trial would have been different but for the errors or that the defendant is factually innocent." 22 O.S.2001, § 1089(C)(2). As we said in *Walker*:

> The amendments to the capital post-conviction review statute reflect the legislature's intent to honor and preserve the legal principle of finality of judgment, and we will narrowly construe these amendments to effectuate that intent. Given the newly refined and limited review afforded capital post-conviction applicants, we must also emphasize the importance of direct appeal as the mechanism for raising all potentially meritorious claims. Because the direct appeal provides appellants their only opportunity to have this Court fully review *all* claims of error which might arguably warrant relief, we urge them to raise all such claims at that juncture.

*Walker*, 1997 OK CR 3, ¶ 5, 933 P.2d at 331 (omitted, emphasis in original). We now turn to Petitioner's claims.

■ ¶ 7 In proposition one, Petitioner claims his trial counsel failed to present compelling and relevant mitigating evidence at the sentencing hearing, thus depriving Petitioner of his right to a fair sentencing determination in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and the Oklahoma Constitution. More precisely, Petitioner claims that, although his trial counsel presented mitigating evidence that Petitioner had been a good inmate who functioned well in a structured environment and would not be a continuing threat in a prison setting,[2] trial counsel had failed to correct an implication made during cross-examination that Petitioner may not be as well adjusted in a medium security prison as he is in a super maximum unit, such as death row. Petitioner claims trial counsel should have produced

---

**2.** In fact, trial counsel presented a substantial amount of mitigating evidence, as thoroughly set forth in our mandatory sentence review in *Thacker*, 2004 OK CR 32, ¶ 30–37, 100 P.3d at 1059–60.

records from the Florida Department of Corrections and a witness from the Florida prison to show Petitioner did in fact function well in a medium security prison environment while incarcerated in the 1990s.

¶ 8 Petitioner further claims his appellate counsel failed to raise this issue on direct appeal because she was the same attorney who represented him at trial, and her employer, the Oklahoma Indigent Defense System, has a policy prohibiting an attorney from raising an issue of ineffective assistance of counsel against herself on appeal.

¶ 9 Assuming, *arguendo*, that this claim is not *res judicata* as having been raised and adequately addressed in Petitioner's direct appeal, we find the proffered evidence falls woefully short of the considerable evidence needed to establish a constitutional claim of ineffective assistance of trial or appellate counsel. *See, e.g., Miller v. State*, 2001 OK CR 17, ¶ 41, 29 P.3d 1077, 1086 (emphasizing the Court will "apply a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.").

¶ 10 The evidence that would supposedly show counsel rendered ineffective assistance would show that, while incarcerated in Florida on separate grand theft auto felony convictions (along with various check fraud convictions), Petitioner "received only two misconducts, one in 1992 for disobeying a medical order to not play basketball, and a second in 1997 for calling a kitchen supervisor a derogatory name." Petitioner's Post-Conviction Application at page 7.

¶ 11 The first infraction involved Petitioner lying to prison officials regarding whether or not he was handicapped and restricted from playing basketball. Petitioner was then under an indefinite health restriction from playing sports, apparently due to some medical problem he had reported. Petitioner, however, reported he was not restricted from playing basketball, which led to disciplinary action.

¶ 12 The second infraction, which was marked as a "major" rather than "minor," involved Petitioner calling the prison's Food Service Director a "fucking asshole," when Petitioner asked for some soap, but was denied. This infraction resulted in disciplinary confinement of thirty days, along with the loss of "gain time".

¶ 13 We find it significant to point out what Petitioner doesn't tell us. First, Petitioner doesn't tell the length of time he was incarcerated in these "medium security" facilities. Receiving "only two" misconduct violations would be considerably less significant if the length of incarceration was decidedly short, whereas it would have more weight if Petitioner was imprisoned for a longer period of time. Secondly, we are provided no information about the differences between the prison conditions in Florida versus those he experienced more recently.

¶ 14 After reviewing these documents, we see no basis for a claim of ineffective assistance of trial or appellate counsel. Even assuming trial counsel should have anticipated a challenge to Petitioner's behavior in prison during cross-examination, there were legitimate strategic reasons to avoid probing into his specific behavior while in Florida. As the Supreme Court cautioned in *Strickland v. Washington*, 466 U.S. 668, 689–90, 104 S.Ct. 2052, 2065–66, 80 L.Ed.2d 674 (1984):

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. *Cf. Engle v. Isaac*, 456 U.S. 107, 133–134, 102 S.Ct. 1558, 1574–1575, 71 L.Ed.2d 783 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, un-

der the circumstances, the challenged action "might be considered sound trial strategy."

This proposition is without merit.

¶ 15 In proposition two, Petitioner claims the trial judge allowed victim impact to play a significant role in second stage deliberations and the weighing process as to aggravation and mitigation. However, we see no evidence the trial judge, as finder of fact, did not comply with 21 O.S.2001, § 701.10. Furthermore, this issue is waived, as it was not raised on direct appeal.

¶ 16 This claim is a basically a reworked version of the "victim impact acts as a super-aggravator" argument that appears in virtually every capital and capital post-conviction case. We have consistently rejected this argument. *Harris v. State,* 2004 OK CR 1, ¶ 58, 84 P.3d 731, 752; *Murphy v. State,* 2002 OK CR 24, ¶ 47, 47 P.3d 876, 886, *cert. denied,* 538 U.S. 985, 123 S.Ct. 1795, 155 L.Ed.2d 678 (1998); *Hooper v. State,* 1997 OK CR 64, ¶ 34, 947 P.2d 1090, 1104, *cert. denied,* 524 U.S. 943, 118 S.Ct. 2353, 141 L.Ed.2d 722 (1998). We see no reason to revisit that issue here.

¶ 17 In proposition three, Petitioner claims appellate counsel, who was also trial counsel, was ineffective for failing to raise the issue set forth in proposition two. However, this claims fails, as we have previously found the underlying issue is without merit.

## DECISION

¶ 18 The application for post-conviction relief is hereby **DENIED.** The Court further finds the Motion for Evidentiary Hearing is **DENIED** due to the fact the materials submitted in support of that motion fail to show the Court by clear and convincing evidence the threshold requirement to warrant an evidentiary hearing, pursuant to Rule 9.7(D)(5), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (2004). Also, pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2005), the **MANDATE** is OR-

**DERED** issued upon the delivery and filing of this decision.

CHAPEL, P.J., C. JOHNSON and A. JOHNSON, JJ.: concur.